Case 1:12-cr-00089-TWP-MJD   Document 132   Filed 02/02/26   Page 1 of 12 PageID #: 882

AO 247 (Rev. 03/19) Order Regarding Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2)   Page 1 of 2 (Page 2 Not for Public Disclosure)

# UNITED STATES DISTRICT COURT
for the
Southern District of Indiana

| | |
|---|---|
| United States of America ) | |
| v. ) | Case No: 1:12-cr-00089-TWP-MJD-1 |
| Jody Russell Trapp ) | |
| ) | USM No: 10464-028 |
| Date of Original Judgment: 11/10/2022 ) | |
| Date of Previous Amended Judgment: ) | Jacob Leon |
| *(Use Date of Last Amended Judgment if Any)* | *Defendant's Attorney* |

## ORDER REGARDING MOTION FOR SENTENCE REDUCTION PURSUANT TO 18 U.S.C. § 3582(c)(2)

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons ☐ the court under 18 U.S.C. § 3582(c)(2) for a reduction in the term of imprisonment imposed based on a guideline sentencing range that has subsequently been lowered and made retroactive by the United States Sentencing Commission pursuant to 28 U.S.C. § 994(u), and having considered such motion, and taking into account the policy statement set forth at USSG §1B1.10 and the sentencing factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable,

**IT IS ORDERED** that the motion is:
☒ **DENIED.** ☐ **GRANTED** and the defendant's previously imposed sentence of imprisonment *(as reflected in the last judgment issued)* of _____ months **is reduced to** _____ .

*(See Page 2 for additional parts. Complete Parts I and II of Page 2 when motion is granted)*

Except as otherwise provided, all provisions of the judgment dated 11/10/2022 shall remain in effect.
**IT IS SO ORDERED**.

Order Date: 2/2/2026

*Judge's signature*

Effective Date: _____
*(if different from order date)*

Honorable Tanya Walton Pratt, U.S. District Court Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:12-cr-00089-TWP-MJD |
| | ) | |
| JODY RUSSELL TRAPP | ) | |
| a/k/a RUSSELL J. TRAPP, | ) -01 | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING AMENDMENT 821 MOTION**

This matter is before the Court on Defendant Jody Russell Trapp's ("Trapp") Amendment 821 Motion filed pursuant to 18 U.S.C. § 3582(c)(2), U.S.S.G. § 1B1.10, and Amendment 821 to the United States Sentencing Guidelines (Dkt. 121). For the reasons explained below, the Motion is **denied**.

### I.   BACKGROUND

In January 2012, Trapp was arrested for stealing over two million dollars from his former employer, Shelton Machinery, which he had used, and lost, trading in the stock market on E*Trade (Dkt. 1). A few months later, the United States of America (the "Government") filed an Information charging Trapp with: Count 1, Wire Fraud; Count 2, Engaging in Prohibited Transactions over $10,000; and Counts 3 and 4, Evasion of Individual Income Tax (Dkt. 26).

Trapp waived Indictment and filed a petition to enter a plea of guilty on all counts (Dkt. 43), but in February 2013, two weeks before sentencing, Trapp fled (Dkt. 53). It was later learned that Trapp had absconded to Utah, assumed a new identity ("Abram Hochstelter," an Amish man), and started a new life and career. Trapp remained in Utah for eight years, until he was finally found by law enforcement and returned to Indiana in 2021. (Dkt. 59).

In July 2022, the Court held a change of plea hearing, at which Trapp pled guilty to all four counts in the Information (Dkt. 84; Dkt. 85 at 11–13; Dkt. 113 at 11–13). The base offense level for Count 1 was 7. Sixteen levels were added pursuant to § 2B1.1(b)(1)(I) because the loss was between $1,5000,000 and $3,500,000. Two levels were added under § 3B1.3 because Trapp abused a position of trust in a manner that significantly facilitated the commission or concealment of the offense. And two levels were added under § 3C1.1 because Trapp willfully obstructed and impeded the administration of justice with respect to the investigation, prosecution, and sentencing of the instant offense by fleeing for eight years. The adjusted offense level for Count 1 was 27.

The base offense level for Count 2 was 23. One level was added under § 2S1.1(b)(2)(A) because Trapp was convicted under 18 U.S.C. § 1957, and two levels were added under § 3C1.1 for Trapp's obstruction of justice. The adjusted offense level for Count 2 was 26.

The base offense level for each of Counts 3 and 4 was 18. Two levels were added pursuant to § 2T1.1(b)(1) because Trapp failed to report or to correctly identify the source of income exceeding $10,000 in any year from criminal activity. *Id.* And as with the other counts, two levels were added under § 3C1.1 for Trapp's obstruction of justice.

Pursuant to § 3D1.4, one level was added to Trapp's greater adjusted offense level of 27, resulting in a combined adjusted offense level of 28. The Court found that the reduction for acceptance of responsibility did not apply due to Trapp's flight and absconding to Utah for eight years. Trapp's total offense level was therefore 28.

Trapp had zero Criminal History Points, placing him in Criminal History Category I. Based on his combined adjusted Offense Level of 28 and Criminal History Category of I, Trapp's advisory sentencing guideline range was 78 to 97 months' imprisonment. The Court imposed a sentence of 90 months imprisonment (Dkt. 113 at 34–35, 43).

In his Amendment 821 Motion, Trapp seeks a reduction of his sentence pursuant to Part B of Amendment 821. The Government has filed a Response in Opposition, in which it asserts that Trapp is ineligible for reduction because Part B of Amendment 821 is inapplicable to him, and even if Part B were applicable, the Court should deny discretionary relief. This matter is now ripe for the Court's review.

## II.   DISCUSSION

The Court has the authority to modify a previously imposed sentence pursuant to 18 U.S.C. § 3582(c)(2) if the defendant's guideline range has been lowered subsequent to his sentencing by an act of the United States Sentencing Commission. In determining whether a defendant is eligible for such relief, district courts are to employ a two-step analysis. *See Dillon v. United States*, 560 U.S. 817, 826 (2010). At step one, the Court determines whether the defendant is eligible for resentencing and the extent of the reduction authorized. *Id.* at 827. In making this determination the Court must heed the binding instructions of the Sentencing Commission codified at U.S.S.G. § 1B1.10. *Id.* at 828–29. If the defendant is eligible for a reduction, the Court advances to the second step. At the second step, the Court considers any applicable § 3553(a) factors and determines whether, in the Court's discretion, the authorized reduction is warranted in whole or in part under the particular circumstances of the case. *Id.* at 827.

### A.   Step 1: Eligibility for Resentencing

In Part B, the Sentencing Commission added a two-offense-level reduction for certain offenders with zero criminal history points under the new U.S.S.G. § 4C1.1. However, the reduction applies only to zero-point offenders who meet the ten criteria under §§ 4C1.1(a)(1)–(10). It is undisputed that Trapp had zero criminal history points, but the parties disagree as to whether Trapp meets § 4C1.1(a)(6), which requires that "the defendant did not personally cause substantial financial hardship."

In determining whether a defendant's acts or omissions caused a victim substantial financial hardship, courts must consider, among other factors, whether the offense caused the victim to become insolvent, file for bankruptcy, suffer "substantial loss of a retirement, education, or other savings or investment fund," making substantial changes to employment, make substantial changes to living arrangements, or suffer substantial harm to an ability to obtain credit. U.S.S.G. § 2B1.1, n.4(F); *see* U.S.S.G. § 4C1.1(b)(3) (requiring courts to consider factors in § 2B1.1, n.4(F)).

Trapp argues that the Court should find that he satisfies § 4C1.1(a)(6) because: (1) based on the evidence in the record, he did not cause a substantial financial hardship; and (2) the Court did not apply the substantial financial hardship enhancement under U.S.S.G. § 2B1.1(b)(2)(A)(iii) during sentencing, and a finding of substantial financial hardship at this stage would be inconsistent. The Court will address each argument in turn.

   1. **Evidence of Substantial Financial Hardship**

As an initial matter, the parties dispute who bears the burden of proving (or disproving) that Trapp did not cause a substantial financial hardship and is thus eligible for resentencing. This court has previously held that the defendant bears that burden. *United States v. Agbi*, No. 19-cr-280, 2024 U.S. Dist. LEXIS 159011, at *7 (S.D. Ind. Sept. 4, 2024); *see also, e.g.*, *United States v. McCombs*, 128 F.4th 911, 914 (7th Cir. 2025) (stating that defendant "bears the burden of showing by a preponderance of the evidence" that he is entitled to offense level reductions); *United States v. Moreno-Padilla*, 602 F.3d 802, 809 (7th Cir. 2010) (stating that typically the defendant must show that facts contained in a presentence investigation report are inaccurate; even if that sometimes requires proving a negative).

The Court need not rehash the burden-of-proof issue here, because regardless of who bears the burden, there is sufficient evidence to show (and not merely fail to disprove) that Trapp caused Shelton Machinery substantial financial hardship. As the Court summarized during sentencing,

4

Trapp began working for Shelton Machinery in 2008, near the start of an historic economic recession. Soon thereafter, he began embezzling from the company. Between 2009 and 2011, he stole over two million dollars, "a significant amount of money, which caused financial *devastation* to his employer and to his fellow coworkers at the business, who all ended up taking a pay cut, making this a serious offense deserving of punishment." (Dkt. 113 at 38 (emphasis added)). Even after Shelton Machinery received an insurance payment, and Trapp paid $100,000.00 in restitution (before fleeing to Utah), Shelton Machinery's actual loss still exceeded two million dollars (Dkt. 126 at 3).

In arguing that he did not personally cause a substantial financial hardship, Trapp points to some of Shelton Machinery's successes following his theft. Shelton Machinery paid its employees Christmas bonuses in 2011 (shortly after discovering the theft), and Shelton Machinery eventually "excelled enough financially" to acquire two companies in 2015 and 2024, respectively (Dkt. 121 at 8–9). As the Government notes, though, the Christmas bonuses were "modest . . . token[s] of appreciation" to employees (Dkt. 126-2 at 1), who were forced to take a twenty percent pay cut the next year (Dkt. 126 at 3). And as to the two acquired companies, the Court agrees with the Government that these acquisitions are not evidence that Trapp caused no substantial financial harm and are instead evidence of Shelton Machinery's resilience in the years after Trapp's theft (Dkt. 126 at 12).

On reply, Trapp further contends that the Government's evidence of financial hardship shows that the economic recession caused Shelton Machinery's hardship, and Trapp's theft merely "exacerbated" that harm (Dkt. 131 at 3). The Court rejects Trapp's proposition that an exacerbation of financial difficulties cannot, in and of itself, cause a substantial financial harm. Indeed, the already weakened state of Shelton Machinery only serves to highlight the seriousness of Trapp's

5

abuse of his position of trust. The Court also disagrees with Trapp that the economic recession was more likely the cause of Shelton Machinery's hardship than Trapp's theft. The recession began in 2008, but Shelton Machinery did not impose pay cuts until 2012. Based on the timing of Trapp's theft (2009–2011) and Shelton Machinery's pay cuts (2012), the Court finds Trapp, and not the 2008 economic recession, personally caused Shelton Machinery's financial hardship. *Contrast Agbi*, 2024 U.S. Dist. LEXIS 159011, at *7 (proving that even without the $50,000.00 loss caused by defendant, victim "would still have lost at least 93% of his 401k . . . , had the same credit-card issues, had to make the same changes to his living arrangements, and had to file bankruptcy.").

    2. **Nonapplication of Hardship Enhancement Under § 2B1.1(b)(2)(A)(iii)**

Trapp argues that during sentencing, the Court "refused to apply" the offense level enhancement under § 2B1.1(b)(2)(A)(iii), and "this Court, the United States Probation Office, and the government's counsel all concluded that Shelton Machinery's loss did not rise to a substantial financial hardship." (Dkt. 121 at 11). Contrary to this assertion, the Government and Probation Office did not concede a lack of substantial financial hardship by declining to seek an enhancement under § 2B1.1(b)(2)(A)(iii). The Government could have decided not to seek this enhancement for any number of reasons. *See* (Dkt. 126 at 15 (stating that Government did not seek enhancement because it was not confident it could meet its burden of proof)); *United States v. Cheng*, No. 21-CR-261, 2025 WL 573767, at *2 (S.D.N.Y. Feb. 21, 2025) (noting that Government had agreed, per defendant's plea agreement, not to seek an enhancement for substantial financial hardship at sentencing, but finding that defendant caused substantial financial hardship anyway). The nonapplication of § 2B1.1(b)(2)(A)(iii) might even have been a simple oversight. Regardless of the reason for it, the nonapplication of § 2B1.1(b)(2)(A)(iii) does not equate a concession that Trapp did not cause substantial financial hardship.

6

Trapp also argues that if the Court did not apply the hardship enhancement under § 2B1.1(b)(2)(A)(iii) but did find hardship under § 4C1.1(a)(6), it would create inconsistent findings (Dkt. 131 at 5 n.3). One reason these findings would be inconsistent, Trapp argues, is that § 2B1.1(b)(2)(A)(iii) (which applies where the *offense* causes the hardship) is broader than § 4C1.1(a)(6) (which applies where the defendant *personally caused* the hardship). So "if a person like Trapp does not get the broader enhancement under § 2B1.1(b)(2), logically, he cannot get the narrowed enhancement under § 4C1.1(a)(6)."

Not so. Even if the Court had made a determination regarding substantial financial hardship at sentencing (which it did not), the commentary for § 4C1.1(a) plainly states that "[t]he application of subsection (a)(6) is to be determined independently of the application of subsection (b)(2) of §2B1.1." Trapp contends that that the Sentencing Commission "made that point only because a defendant who meets § 2B1.1(b)(2)'s *broader* substantial-financial-hardship enhancement (which covers a co-conspirator's actions) need not be disqualified under § 4C1.1(a)(6)'s *narrower* criteria." (Dkt. 131 at 5 n.3 (emphasis in original)). This reading of the commentary is reasonable, but it is ultimately speculative. The Court will not read an intent or limitation into the Commission's commentary where there is none. The commentary instructs courts to determine whether § 4C1.1(a)(6) applies "independently" of § 2B1.1(b)(2)(A)(iii), and that is what the Court will do.

Although the Seventh Circuit has not yet had occasion to decide whether the absence of a sentencing enhancement under § 2B1.1(b)(2)(A)(iii) precludes a finding of ineligibly under § 4C1.1(a)(6), other courts have consistently held that it does not. *United States v. Harmon*, 150 F.4th 197, 206 (3d Cir. 2025) ("The sentence reduction exception in § 4C1.1(a)(6) and the sentence enhancement in § 2B1.1(b)(2) should be considered separately. Harmon urges us to do the opposite, and we decline."); *United States v. Gillar*, No. 17-544, 2025 WL 1531274, at *6 n.6

(D.N.J. May 29, 2025) ("The Court . . . rejects the notion that the requested relief is warranted because the Government and the Probation Office failed to seek the substantial financial hardship enhancement pursuant to U.S.S.G. § 2B1.1(2)(A)(iii)."); *United States v. Cifuentes*, No. 17-187, 2025 WL 1505481, at *3–4 (D.N.J. May 27, 2025) (rejecting defendant's argument that the law of the case doctrine barred consideration of victim's substantial financial hardship because Government failed to seek enhancement under § 2B1.1(b)(2)(A)(iii) at sentencing, and only sought an enhancement under § 2B1.1(b)(2)(A)(i)); *Cheng*, 2025 WL 573767, at *2 (finding that defendant was ineligible for resentencing because he personally caused substantial financial hardship, even though the Government had agreed, per plea agreement, not to seek an enhancement for substantial financial hardship, and even though probation office found defendant eligible under Part B); *United States v. Hanson*, No. 19-0089, 2024 WL 2781065, at *4 (D.N.D. May 30, 2024) ("The Court rejects the contention that there can be no finding of substantial financial hardship absent an enhancement under U.S.S.G. § 2B1.1(2)(A)(iii)."); *United States v. Stites*, No. 22-20020, 2024 WL 3535120, at *2 & *4 (D. Kan. July 24, 2024) ("The court rejects Ms. Stites's argument that the court can't find substantial financial hardship absent an enhancement under § 2B1.1(b)(2)(A)(iii)."); *cf. United States v. Moseley*, No. 16-0079, 2024 WL 3898237, at *3 (S.D.N.Y. Aug. 22, 2024) (finding that even if application of § 2B1.1(b)(2)(A)(iii) did not automatically render defendant ineligible for resentencing under Part B, "the [c]ourt would have no trouble *independently* concluding that Moseley personally caused substantial financial hardship to his victims" (emphasis added)); *United States v. Hise*, No. 20-cr-40072, 2024 WL 1741590, at *2 (S.D. Ill. Apr. 23, 2024) (same). This wealth of caselaw reinforces the Court's conclusion that the nonapplication of an enhancement under § 2B1.1(b)(2)(A)(iii) does not preclude a finding of substantial financial hardship under § 4C1.1(a)(6).

8

For the reasons explained above, the Court finds that Trapp personally caused Shelton Machinery substantial financial hardship under § 4C1.1(a)(6). Because Part B to Amendment 821 is therefore inapplicable, Trapp's guideline range does not change, and he is not eligible for resentencing. *See* § 3581(c)(2); § 1B1.10(a)(2)(B). Although Trapp's Motion fails at step one of the *Dillon* test, the Court analyzes step two for the sake of thoroughly addressing his arguments.

B.     **Step 2: Discretionary Reduction of Sentence**

A sentence of imprisonment is final, to be modified only in limited circumstances. 18 U.S.C. § 3582(b); *Dillon*, 560 U.S. at 824. Based on the § 3553(a) factors, the Court found at sentencing that a 90-month sentence was appropriate, and it will not now disturb this finding.

Trapp argues that his post-sentencing conduct supports a sentence reduction, and that a reduction would "give [him] more time to pay back the restitution that he owes to Shelton Machinery." (Dkt. 121 at 12–13, 17). However commendable Trapp's behavior has been while incarcerated, it does not persuade the Court that a reduction is warranted considering the seriousness of his offenses and gross misconduct while on pretrial supervision. Trapp abused a position of trust to steal millions of dollars from his employer, which partially fell on the shoulders of his former coworkers and their families. Trapp then went to great lengths to avoid accountability for his actions by fleeing to Utah. Yet even after escaping the threat of imprisonment (for the time being), Trapp made no attempt to "move on and fix his life." (Dkt. 121 at 13). During his eight years at large, Trapp made no restitution payments, and more concerningly, he allegedly began defrauding his new family and community in Utah (Dkt. 113 at 41–43). Trapp's model behavior while incarcerated does not negate or outweigh his illicit behavior while free. Nor does it convince the Court that an earlier release date would increase the odds that Trapp promptly pays restitution (Dkt. 113 at 41–43).

9

Trapp also argues that a sentence reduction should be granted to avoid sentencing disparities, and that a reduced sentence would reflect the seriousness of the offense, promote respect for the law, and provide just punishment (Dkt. 121 at 14, 16–17). The Court considered this same argument during sentencing, and the Court's reasons for rejecting this argument remain the same (Dkt. 113 at 27). A higher-than-average sentence was, and is, appropriate because of the extent of the financial and emotional harm Trapp caused, and because the defendants in otherwise similar cases "didn't abscond for eight or nine years." *Id.* at 27, 42–43. The Court makes the same finding here. Trapp's flight highlights the "great need" for deterrence. *Id.* at 43. And unlike some other white-collar offenses that are committed to "feed an addiction or a gambling habit" (Dkt. 126 at 22), Trapp's actions "can be attributed to nothing other than greed and complete disregard for the citizen victims in this case." (Dkt. 113 at 40).

The fact that a 90-month sentence would be an upward variance from an adjusted guideline range, combined with Trapp's good behavior while incarcerated, does not persuade the Court that a sentence reduction is warranted considering the seriousness of Trapp's offenses and the egregiousness of his flight and continued misconduct while living in Utah. *See United States v. Campos*, No. 24-2059, 2025 WL 2083187 (7th Cir. July 24, 2025) (affirming denial of sentence reduction under Amendment 821 despite evidence of rehabilitation; "The analysis of the § 3553(a) factors is an independent basis upon which a court may resolve a motion for sentence reduction, and just one good reason based on the § 3553(a) factors is enough to deny relief." (citation modified)); *United States v. Chavez*, No. 08-cr-746, 2025 U.S. Dist. LEXIS 173418, at *9 (N.D. Ill. Sept. 5, 2025) ("[The defendant's] extensive participation in rehabilitative programming, standing alone, is insufficient to counter the gravity of his conviction."); *United States v. Mercado*, No. 15-CR-100, 2024 U.S. Dist. LEXIS 218110, at *5, 10–11 (S.D. Ind. Dec. 3, 2024) (finding

that consideration of § 3553(a) factors did not warrant a reduction of 100-month sentence, despite adjusted guideline range being 60–71 months).

Considering all the § 3553(a) factors together, a reduction of sentence—even if Trapp were eligible for one—is not warranted. Considering the nature and circumstances of the offense, Trapp's history and characteristics, the seriousness of the offense, the need to promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and to protect the public from further crimes, Trapp's 90-month sentence is sufficient but not greater than necessary, and should not be reduced.

The Court commends Trapp for his impeccable behavior and diligent efforts toward personal and professional growth while in custody ([Dkt. 121 at 6](#)–7), and hopes those efforts continue until and after his anticipated release next spring. https://www.bop.gov/inmateloc/ (last visited January 30, 2026).

### III. CONCLUSION

For the reasons discussed above, Trapp's Amendment 821 Motion ([Dkt. 121](#)) is **DENIED**.

**SO ORDERED**.

Date:   2/2/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel

11